Filed 2/19/15  P. v. Clark CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EMILY SUZANNE CLARK,<br><br>Defendant and Appellant. | C074210<br><br>(Super. Ct. No. CM037006) |

A jury found defendant Emily Clark guilty of second degree robbery of a Dollar Tree store (Pen. Code, § 211)[1] and found true the allegation that she personally used a firearm (§ 12022.53, subd. (b).)  Sentenced to 13 years in prison, she appeals.  She contends the trial court erred in admitting evidence that she was a suspect in an unrelated

---

[1] Further undesignated statutory references are to the Penal Code.

1

series of bank robberies, and insufficient evidence supports the order to pay the cost of her public defender. We strike the order to pay and otherwise affirm.

**FACTS**

On the night of September 3, 2012, Angelica Martinez was working the cash register at the Dollar Tree store in Chico. She saw a thin woman enter the store, wearing a black tank top, jeans, and a wig, and carrying a large purse. The woman (later identified as defendant), selected an energy drink, then approached the register and handed Martinez two dollars.

As Martinez was making change, defendant pulled a gun from her purse. She told Martinez to give her the money. Martinez did not know if the gun was real and asked, "Are you serious?" Defendant replied "Yes. I don't want to have to hurt you. Now put the money in the bag." Defendant pulled out a crumpled plastic bag from her purse and Martinez put the money in the bag. Defendant took it and left. Martinez called the police.

Martinez had familiarity with guns as her uncle was a gun collector. Defendant's gun had a squared muzzle at the base, but a rounded barrel like a revolver. To Martinez, it looked like "someone had married those two things together, a revolver and a regular firearm," which struck her as unusual.

The Dollar Tree store had surveillance cameras; one was trained on the cash register and captured the robbery on video.

On September 13, 2012, a teller at U.S. Bank in Chico saw two suspicious people enter the bank. The man wore a red baseball cap and sunglasses, and the woman had an obvious black, choppy wig, a black tank top, sunglasses, and a beige purse. The teller had received information that a similar looking man had robbed the Colusa branch of the bank. She immediately notified the branch manager by instant messaging.

Sally Mendez, the branch manager, received the message and went to acknowledge the suspicious customers, asking, "So what's going on?" The man

2

responded, but the woman did not; she was writing something at the deposit kiosk. The customers left and Mendez called the police.

Officer Scott Harris was on patrol that day. That morning at the police briefing he had learned of a BOLO (Be On The Lookout) flyer from the FBI about a series of bank robberies. When he saw the pending call from the U.S. Bank, he pulled up the description of the suspicious customers. He saw the description was similar to that in the FBI BOLO flyer. The flyer had listed the vehicle as a tan Suburban. He saw a tan Yukon, a similar vehicle, near the bank. The female driver was wearing dark glasses and an obvious wig. When the Yukon pulled into a parking lot, he activated his lights and waited for backup. When the male passenger got out of the car, something fell to the ground. It was a loaded gun.

Detective James Parrott went to the scene and had Martinez brought there for an in-field show-up. Martinez identified defendant as the robber; she was 80 to 90 percent certain. Defendant was the same height, had a similar jaw line, and similar wide hands. The wig looked the same but it had been chopped off. Martinez identified the distinctive gun.

The Yukon was seized and searched. Several items linked to the Dollar Tree robbery were found inside, including the robber's tan and brown handbag, coin purse, a black tank top, and sunglasses. The loaded gun was a Ruger Mark II .22 caliber semi-automatic that had been modified with a scope on top of the slide. That gun is not common; its semi-automatic mechanism was internal and it had a thick and unique barrel.

Defendant presented an alibi defense, claiming she spent the evening and night of the robbery (Monday, September 3) with a companion on a motorcycle ride. Her alleged companion, however, had told a defense investigator the day of the ride was Tuesday, not Monday, which he remembered because he had to work the next day; his days off were Sunday through Tuesday.

# DISCUSSION

## I

### *Admission of Evidence of Bank Robberies*

Defendant contends the trial court erred in admitting evidence that she was a suspect in a series of unrelated bank robberies. She contends this evidence was impermissible character evidence, cumulative, time consuming, and prejudicial.

A. *Background*

Prior to trial, the People sought to admit evidence that defendant engaged in robbing banks with her male accomplice. The People argued the evidence was probative as to "intent, preparation, plan, knowledge, identity and absence of mistake or accident." They wanted to admit evidence of the BOLO flyer from the FBI about the bank robberies, as well as photographs and teller testimony from U.S. Bank, and a photograph of the female suspect in a Bank of America robbery.

The trial court ruled the BOLO flyer and the call from U.S. Bank that suspects matching the BOLO report had been in the bank were admissible. The court excluded evidence of other bank robberies with similar perpetrators as too prejudicial. "But certainly the police could say that there[] [are] ongoing robberies, persons matching her description but not to the extent where you would bring in separate witnesses for those robberies."

The People filed a motion to reconsider with respect to the exclusion of the photograph from the Bank of America robbery. The trial court confirmed its ruling. After a hearing pursuant to Evidence Code section 402 on the BOLO flyer, the court ruled both witnesses from U.S. Bank could testify, and a redacted copy of the BOLO flyer would be admitted.

The trial court gave a limiting instruction on the use of other crimes evidence to prove identity.

4

B. *The Law*

Evidence Code section 1101, subdivision (a) prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Evidence of a defendant's uncharged misconduct is admissible to prove certain facts, such as identity, other than criminal disposition. (Evid. Code, § 1101, subd. (b).)

"For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403 (*Ewoldt*).)

The admissibility of uncharged misconduct "depends on the materiality of the fact sought to be proved, the tendency of the prior crime to prove the material fact, and the existence or absence of some other rule requiring exclusion." (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 203.) "Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]' [Citations.]" (*Ewoldt, supra,* 7 Cal.4th at p. 404.) Because such evidence has substantial prejudicial effect, " 'uncharged offenses are admissible only if they have *substantial* probative value.' [Citation.]" (*Ibid.*, original italics.)

The admission of evidence under Evidence Code section 1101 is reviewed on appeal for an abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786, 864.)

C. *Analysis*

While the trial court purported to exclude evidence of the unrelated bank robberies as unfairly prejudicial given their limited probative value, the court undercut its own ruling by admitting the BOLO flyer. That flyer contained several pictures of a man and woman and indicated they were "wanted for multiple robberies in Northern CA." Evidence, such as Officer Harris's testimony, that tied defendant to the BOLO flyer,

5

informed the jury that defendant was suspected in a series of bank robberies despite the trial court's expressed intention to preclude the jury from considering the unrelated robberies. As we will explain, this admission of the BOLO flyer, given its limited probative value and its high risk of unfair prejudice from labeling defendant as a serial bank robber, was error.

The BOLO flyer was offered to prove defendant's identity--the primary issue in her case, particularly given that defendant offered an alibi defense. The probative value of the BOLO flyer to prove defendant's identity *as the Dollar Tree robber*, however, was very limited. Most of the photographs on the BOLO flyer showed the male suspect. The photo of the female was fuzzy and showed she had short dark hair, hair that was shorter than either that of the robber in the video of the Dollar Tree robbery or defendant's wig when apprehended. The woman in the BOLO flyer wore a jacket, obscuring her body type (thus whether she was thin, like defendant, was not apparent). She carried a different shoulder bag than did defendant during the Dollar Tree robbery. The male suspect in the BOLO flyer is holding a gun with a long barrel, which appears longer than the barrel of the gun recovered on September 13--the gun that Martinez positively identified as carried during the Dollar Tree robbery. The image on the BOLO flyer is not clear enough to determine whether the gun had been modified by adding a sight, as was the Dollar Tree gun. Nor does the BOLO flyer show the base of the gun, which Martinez described as square.

Thus, neither the gun nor the woman in the BOLO flyer appears identical or even substantially similar to the gun and woman in the Dollar Tree robbery, or to the defendant and the gun found on September 13.

Given the substantial prejudice, as properly recognized by the trial court, of suggesting that defendant was a serial bank robber, and the limited probative value of the BOLO flyer to show defendant was the Dollar Tree robber, the trial court abused its discretion in admitting the BOLO flyer.

6

D.  *Harmless Error*

Errors in the admission of uncharged misconduct are assessed under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*People v. Thomas* (2011) 52 Cal.4th 336, 356, fn. 20, citing to *People v. Malone* (1988) 47 Cal.3d 1, 22.)  Under the *Watson* standard we determine whether it was "reasonably probable that a result more favorable to defendant would have resulted" had the uncharged misconduct evidence not been admitted.  (*People v. Welch* (1999) 20 Cal.4th 701, 750 (*Welch*).)

Although defendant contends the admission of this evidence rendered her trial fundamentally unfair and thus should be reviewed under the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18 at page 24, we disagree.  In *People v. Albarran* (2007) 149 Cal.App.4th 214, a divided panel of another appellate court held the introduction of "a panoply of incriminating gang evidence," including threats to police, the Mexican Mafia, and several unrelated crimes, where there was nothing inherent in the facts of the charged shooting to suggest any gang motive and the gang evidence was highly prejudicial, violated defendant's due process right, and led to a fundamentally unfair trial.  (*Id*. at pp. 227, 230-232.)  In doing so, it applied the *Chapman* standard, noting, however, that the case before it "present[ed] one of those rare and unusual occasions" where the error was of federal constitutional dimension.  (*Id*. at p. 232.)  The court explained, " 'Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process.  Even then, the evidence must "be of such quality as necessarily prevents a fair trial."  [Citations.]  Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose.'  [Citation.]"  (*Id*. at p. 229.)

This is not a "rare and unusual" case like *Albarran*.  The evidence connecting defendant to a series of bank robberies was neither as incriminating nor as overwhelming as the gang evidence in *Albarran*.  Further, it had *some* probative value, though slight, on the issue of the identity of the Dollar Tree robber.  Defendant points to nothing in the

7

admission of the uncharged misconduct evidence in this case that rendered the trial any different from most other cases in which such evidence has been improperly admitted. She has not shown the error in admitting the evidence made her trial fundamentally unfair. We review the error under the *Watson* standard for harmless error.

Under the *Watson* standard we find the error harmless because it was not "reasonably probable that a result more favorable to defendant would have resulted" had the uncharged misconduct evidence not been admitted. (*Welch, supra,* 20 Cal.4th at p. 750.) The evidence tying defendant to the Dollar Tree robbery was compelling. The robbery was caught on video for the jury to see. Martinez made a strong--80 to 90 percent certain--identification of defendant as the robber. She positively identified the unusual gun defendant had used in the Dollar Tree robbery, which was recovered from defendant's partner-in-crime after defendant was caught with him at the U.S. Bank acting suspiciously. Clothing, the handbag, and the coin purse shown on the video of the robbery were found with defendant at the U.S. Bank--only 10 days after the Dollar Tree robbery. Defendant's alibi defense was undercut by evidence her companion had told the investigator he was with defendant on the day *before* the robbery at issue, rather than the day *of*, as she had asserted. Taken together, this was ample evidence of defendant's guilt.

Finally, the court gave a limiting instruction that the other crimes evidence was to be used only to prove identity. We presume the jury followed this instruction. (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.)

## II

### *Order to Reimburse Cost of Court-Appointed Attorney*

Defendant contends the trial court erred in ordering her to reimburse the costs of her public defender because the record shows she had no ability to pay those costs.

A. *Background*

The probation report indicated defendant made $2,400 per month as an accountant, but had no cash or property. She was fully supported by her fiancé. She had

8

a drug problem and spent $7,000-8,000 per month on drugs and gambling. The probation report concluded defendant was able bodied and had marketable skills, so she should have the ability to pay fines and fees upon her release from custody. It recommended various fines and fees, but did not mention the reimbursement of attorney fees. Defendant submitted a statement of assets, indicating she had no money or property.

At sentencing, the trial court asked defendant if she was still working. She said "yeah," the job was still open, but she was not being paid and was not making any money. The court ordered restitution payable to Martinez (for missed work) and Dollar Tree, and various fines and fees. It found defendant had no ability to pay the $736 cost of the presentence investigation report, but ordered attorney fees of $420 without making any findings. The court asked if defendant wanted to be heard or have a hearing. Both defendant and counsel said no.

B. *The Law*

Section 987.8 permits a court to order a defendant to pay the cost of court-appointed counsel after a hearing to determine if defendant has the ability to pay. "In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, . . . the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof." (*Id.,* subd. (b).) In determining this ability to pay, the court may consider both defendant's present financial position and the defendant's reasonably discernible future financial position, limited to six months in the future. (*Id*., subd. (g)(2)(B).) "Unless the court finds unusual circumstances, a defendant sentenced to state prison shall be determined not to have a reasonably discernible future financial ability to reimburse the costs of his or her defense." (*Ibid*.)

The statute sets forth procedural requirements for the statutory imposition of attorney fees. The court is to make an ability-to-pay determination only after affording

defendant notice and a hearing.  (§ 987.8, subd. (b).)  The court must make an express finding of unusual circumstances before ordering a state prisoner to reimburse his attorney.  (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1537.)

C.  *Analysis*

The People argue that defendant expressly waived the right to a hearing and has forfeited the claim of insufficient evidence of the ability to pay by failing to object in the trial court.  Recently, in *People v. Aguilar* (2015) 60 Cal.4th 862 (*Aguilar*), our Supreme Court held the forfeiture rule applied where defendant failed to object to the amount of counsel fees or to assert the inability to pay in the trial court.

Defendant contends no objection is required to preserve the issue for appeal, citing *People v. Viray* (2005) 134 Cal.App.4th 1186.  In *Viray*, the appellate court held that a forfeiture to an appellate challenge to an attorney fee reimbursement order cannot "properly be predicated on the failure of a trial attorney to challenge an order concerning *his own fees*," given the "patent conflict of interest."  (*Id.* at p. 1215, original italics.)  The People urge us to reject *Viray*, arguing its reasoning is flawed.

In *Aguilar,* our Supreme Court noted the case did not present, "and we therefore do not address, the question whether a challenge to an order for payment of the cost of the services of appointed counsel is forfeited when the failure to raise the challenge at sentencing may be attributable to a conflict of interest on trial counsel's part."  (*Aguilar, supra,* 60 Cal.4th at p. 868, fn. 4.)  Nor did the case concern the statutory presumption of section 987.8, subdivision (g)(2)(B) for defendants who are sentenced to prison.

Here defendant *does* raise the possibility that the failure to object was due to a conflict of interest.  Because the issue of the applicability of *Viray*, a ten-year-old case, is unsettled and a statutory presumption is involved--requiring the trial court to find "unusual circumstances" to order reimbursement from a state prisoner--we reach the merits of defendant's claim.

10

Contrary to the People's assertion, there was no evidence that defendant had a present ability to reimburse the costs of her defense. She was not making any money and had no assets; apparently, she had spent all she earned (and more) on drugs and gambling. Recognizing defendant's *current* inability to pay, the probation report considered her *future* ability to pay in connection with the recommended reimbursements. However, as we have explained, the statute controlling reimbursement of attorney fees limits that determination to six months into the future. Further, there is a statutory presumption that because defendant was sentenced to prison, she had no future ability to pay absent unusual circumstances. The trial court failed to make that finding, and we see no basis for finding unusual circumstances. The statutory presumption controls; defendant had no future ability to pay. Because defendant had no ability to pay, based on either her present or future financial position, the reimbursement order must be stricken.

## DISPOSITION

The order for reimbursement of attorney fees is stricken. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment striking the order and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

                                                DUARTE , J.

We concur:

BLEASE , Acting P. J.

BUTZ , J.

11